*Pascack Ass'n, Ltd. v. Washington Tp. Mayor & Council.,* 74 *N. J.* 470, 485 (1977).

The judgment of the Law Division is reversed.

COUNTY OF BERGEN, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. BOROUGH OF PARAMUS AND PRESTON J. O'TOOLE, ERRONEOUSLY DESIGNATED AS PETER O'TOOLE, TAX COLLECTOR/TREASURER OF THE BOROUGH OF PARAMUS, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted March 14, 1978—Decided April 14, 1978.

Before Judges MATTHEWS, CRANE and ANTELL.

*Mr. Joseph S. Di Maria,* attorney for appellants (*Mr. Ben R. Cascio* and *Mr. Joseph S. Di Maria,* on the brief).

*Mr. Vincent P. Rigolosi,* County Counsel, attorney for respondent (*Mr. Dean Lynch,* Assistant County Counsel, on the brief).

The opinion of the court was delivered by

ANTELL, J. A. D. Presented on this appeal is the question of whether certain lands owned by the County of Bergen are subject to local real estate taxation. The property consists of extensive acreage adjoining the Bergen Pines Hospital Complex, a county institution.

Under *N. J. S. A.* 54:4-1,

All property real and personal within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter.

The statute under which Bergen County claims its right to exempt status is *N. J. S. A.* 54:4-3.3 which, insofar as applicable, provides:

Except as otherwise provided by article 1 of this chapter (§ 54:4-1, *et seq.*), the property of the State of New Jersey; and the property of the respective counties, school districts and taxing districts *used for public purposes* * * * shall be exempt from taxation under this chapter. [emphasis supplied]

For the exception to apply it is required that there be not only public ownership of the property but that the property be "used for public purposes." As we held in *Jersey City v. Jersey City Parking Auth.*, 138 *N. J. Super.* 442, 444 (App. Div.), aff'd o. b. 71 *N. J.* 492 ,(1976) the statute conditions the exemption upon "the coalescence of public ownership and public use."

That the property must be used for public purposes has been settled for many years. *Jamouneau v. Division of Tax Appeals*, 2 *N. J.* 325, 332 (1949); *Teaneck Tp. v. Division of Tax Appeals*, 10 *N. J. Super.* 171, 174 (App. Div. 1950). The rule is also applied under other statutes allowing tax exempt status to autonomous agencies. *Moonachie v. Port of N. Y. Auth.*, 38 *N. J.* 414, 426-27 (1962); *Port of N. Y. Auth. v. Newark*, 20 *N. J.* 386, 394 (1956); *New Jersey Turnpike Auth. v. Washington Tp.*, 16 *N. J.* 38, 44 (1954);

*Jersey City v. Jersey City Parking Auth., supra,* 138 *N. J. Super.* at 444.

■■ Tax exemption statutes based on the personal status of the owner rather than on the use to which the property is put are barred by the tax article of our Constitution which provides that "Property shall be assessed for taxation under general laws and by uniform rules." *N. J. Const.* (1947), Art. VIII, § I, par. 1(a). *N. J. Turnpike Auth. v. Washington Tp., supra,* 16 *N. J.* at 44–45. Because "[a]ny impairment of the taxing power affects the lifeblood of government * * * claims for tax exemption have to stand scrutiny to show that they serve a public purpose." *Id.* at 44. The burden of proof rests upon the one asserting a tax exemption to establish the right. *Jamouneau v. Division of Tax Appeals, supra,* 2 *N. J.* at 330.

The economic basis for this interpretation is outlined in the following language of *Moonachie v. Port of N. Y. Auth., supra:*

All real property in this State not expressly exempted is subject to taxation. *N. J. S. A.* 54:4–1. For example, property acquired by a municipality through tax title foreclosure is taxable if used for private purposes. *N. J. S. A.* 54:4–3.3. The same is true of property of public agencies which is not used for the authorized public purpose or held for such expected use within a reasonable time. *New Jersey Turnpike Authority v. Washington Township,* 16 *N. J.* 38, 44 (1954) ; *N. J. S. A.* 54:4–63.26. Traditionally the property tax has been the chief source of revenue of local governments. Recent times have witnessed efforts on the part of state legislatures to relieve somewhat the almost exclusive dependence upon the single source of revenue. But even in those jurisdictions, property taxation still represents the mainstay of local government. Recent years have witnessed also a steadily increasing taking of private property by both state and federal governments and various agencies thereof for public purposes, thus removing it from the tax rolls and casting a proportionately greater share of support of state and local government upon the private property owner. The value for assessment purposes in 1962 of all types of real property specifically exempt from taxation in New Jersey has been calculated at over 2.5 billion dollars. See, *Certification of the State Abstract of Ratables* for 1962, Division of Taxation, July 18, 1962; *Financial Statistics of New*

The lands are vacant; there are no buildings or structures located thereon, and as to any possible future use the trial judge concluded that "there are no plans on the drawing board so to speak." All that he found was "that the County is holding the land."

·[V]acant·land as here, not now in the public use or presently intended for public use is taxable even when owned by bodies having a right to tax exemption with respect to property used for an appropriate purpose. [*N. J. Turnpike Auth. v. Washington Tp., supra*, 16 *N. J.* at 44]

, Furthermore, in *Paramus v. Capello*, 66 *N. J.* 1, 5 (1974), the court affirmed findings of the Division of Tax Appeals that these very same lands adjoining the Bergen Pines Hospital Complex are "unused." The occasion for this determination was an application by the Borough of Paramus for a rebate under *N. J. S. A.* 54:4–5 based upon the statutory ground that the Bergen Pines Complex was a county institution "occupying" more than 200 acres of land. In concluding that the application was properly denied, the decision found that the lands were not shown to be occupied by the county institution within the meaning of the statute. This result was reached in the following language: ·

We also agree that the term "occupying" as used in the statute means something more than mere ownership of the land and connotes actual governmental use. We are satisfied that the findings of the Division of Tax Appeals that large sections of the 185-acre Bergen Pines Complex are presently unused is supported by the record. The judgment is affirmed on this basis. [at 4–5]

■ ■ We do not find persuasive Bergen County's argument that because the term "occupy" as used in the tax rebate statute considered in *Capello* connotes a more "active" relationship to the land than the concept of "use" in the exemption statute before us, the Borough of Paramus bore

a greater burden in *Capello* than the County of Bergen does here. These provisions are *in pari materia* and should be read together. *State v. Green*, 62 *N. J.* 547, 554–55 (1973) ; *Clifton v. Passaic Cty. Bd. of Tax.*, 28 *N. J.* 411, 421 (1958). *N. J. S. A.* 54:4–5 provides tax relief to a municipality containing within its boundaries more than a specified measure of acreage occupied by a county institution. The *Capello* decision, *supra*, 66 *N. J.* at 4, was careful to point out that the tax relief is available only with respect to county-owned "tax exempt" lands. Since, as the court further explained, the rebate's purpose is to compensate the municipality for lost revenues resulting from the tax exempt status of county-owned land, denial of the rebate unquestionably implies that the land is not exempt from taxation and that the criteria of "occupy" and "use" respectively employed in *N. J. S. A.* 54:4–5 and *N. J. S. A.* 54:4–3.3 are identical.

Reversed.